My name is Tony Gallagher and I represent Gus Skurdal. During Mr. Skurdal's original foray in the district court, questions arose with regard to his competency. Chief Judge Shandstrom at that time sent him for a mental evaluation. He was found to be mentally competent, but Judge Shandstrom later found that he was incapable of representing himself and he was not able to knowingly and intelligently waive representation. Counsel was appointed for the trial. Following Mr. Skurdal's conviction and sentencing, a timely notice of appeal was filed. The Ninth Circuit granted trial counsel's motion to withdraw. That is the basis. Was trial counsel appointed to represent him on appeal or did he just continue? He just continued the representation. Without any further order? That's correct, Your Honor. Okay. And when he moved to withdraw, the Ninth Circuit informed him that he was permitted to withdraw and then informed Mr. Skurdal that he had the right to request appointed counsel or to represent himself. And, of course, this Court at that time granted Mr. Skurdal's request to represent Now, this Court has posed a number of questions and supplemental briefing which focused the issue of today's argument and focused the issue of whether or not Mr. Skurdal's 2255 should be granted and he should be allowed to raise the issues which he was – which he did not raise on direct appeal. And if I may, I'd like to address those questions seriatically. First, the Court asked, does an indigent have due process right to be represented on appeal? And the answer to that question, of course, is yes. The government has conceded that point, but the government argues that that right was not violated here because Skurdal chose to proceed pro se. But as we know from Judge Shandstrom's trial court ruling, a ruling that, by the way, has not been challenged by the government, that he was incompetent to knowingly and voluntarily and intelligently waive his right to counsel. And the record in addressing the second question. Well, let me ask, was there a ruling that he was not capable of waiving his right to counsel, or was it that he was not capable of representing himself at trial? Well, he was not capable of representing himself. Practically speaking, at trial, I can understand those to be the same. It could be argued that the skills needed to – you have to utilize to represent yourself on appeal may be a different set of skills than the skills you need in a courtroom. And there's been no determination, I take it, as to his capability to represent himself on appeal. That's correct, Your Honor. There has been no specific – no one has addressed that issue, of whether or not he had the skills to argue an appeal, write an appeal, present his issues to the Court. But I would remind the Court that in denying his original appeal, I believe the Court used the language, rambling and often incoherent, in describing Mr. Skirdal's argument. And, frankly, in preparing for this appeal today and reviewing Mr. Skirdal's arguments and his communications with us, they have indeed been rambling and incoherent. So as you've said, Judge Clifton, there are different skills which are required at the trial level and at the appellate level. But certainly Mr. Skirdal has demonstrated that he did not have the skills required to effectively present his arguments to this Court because he was rambling and incoherent, didn't understand the procedures, and, further, missed those points which we feel are valid points to raise in a direct appeal. Because he was incapable of waiving intelligently his right to appellate counsel, that brings us here. And there was a third question posed by the Court. Does the district court's finding that Skirdal was incapable of knowingly, intelligently waiving his right to counsel below, does that establish the law of the case? Since it was unchallenged below, and essentially remains unchallenged now by the government as far as a factual determination is concerned, even if Skirdal somehow became familiar with the process through his involvement in the criminal justice system in this case, there is nothing in this record to show that he, that the written waiver that he gave to this Court was in any way knowing and intelligent. And the law of the case, at least as established by United States v. Alexander, precludes reconsideration of that issue now unless there are certain specified circumstances. Kennedy. Does that doctrine apply when the trial court has made a determination? Does it apply to the appellate court that reviews? Well, I would say yes, Your Honor, it does. What is your authority for that? I have trouble finding it. I go once again to Alexander. And there really isn't anything in this record to indicate that the circuit was even advised of the findings below. That's a different problem, isn't it? It is a different problem, but they are interrelated. Judge Clifton has pointed out there has been no determination by anybody as to his ability to make a knowing and intelligent waiver of his right to appellate counsel on appeal. That's true. But I think the record indicates that he was incapable of knowingly and intelligently waiving his right to counsel because of what's established in the district court record and the record before this Court during the habeas proceedings. There is nothing in this record to show that there was a challenge to Judge Shandstrom's original finding that he was incapable of knowingly and intelligently waiving his right to trial counsel. Now, to go back to Judge Clifton's question, it doesn't necessarily a fortiori address his right to appellate counsel and whether or not he understood that he had a right to appellate counsel. And whether or not he understood and could intelligently waive his right to appellate counsel. But absent anything in this record to the contrary, we must rely on Judge Shandstrom, the trial judge's findings, having Mr. Skirdal before him, heard Mr. Skirdal, saw Mr. Skirdal, read Mr. Skirdal's many musings, that he wasn't competent at that time, and there's nothing to indicate that he's competent now. And so, although they are two separate questions, and although there has not been a specific question by this Court asking whether or not he intelligently and knowingly waived his right to appellate counsel, is one of the issues that Mr. Skirdal, with proper representation either by himself or an attorney, one of the issues on his direct appeal was that he was improperly denied his forerunner right. And that he was capable of making a knowing and intelligent waiver, and that the Court clearly erred in concluding he couldn't make that. It could have been, but we would not necessarily do that. And I do not want to tie us in. I'm now – I'm trying now to direct you, because your time is getting short, to the Anders problem, if there is one here. Well, we do believe there is an Anders problem here. And this kind of addresses the last two questions that were posed by the Court. And that is, does this Court have a sui sponte obligation to look into the appellant's ability to intelligently waive counsel? We don't think so. Frankly, that's not really the responsibility of the Court, but it is the responsibility of trial counsel. Trial counsel in this particular case had an obligation, either in his Anders brief or in his affidavit in support of his motion to withdraw, to let the Court know what's going on. And by leaving Mr. Skirdal standing alone, by stranding him at the appellate court door, he did not fulfill his obligation as counsel. He did not even rise to that low standard that Strickland requires. And because he did not notify the Court, and because this Court was not on notice of the possible problems with regard to his competency and incapability, then there is indeed prejudice. I note that I have very few seconds left, but I would like to reserve what I have for rebuttal. Thank you. Good morning, Your Honors. My name is Ed Laws. I represent the District of Montana in this matter. The Court has never addressed a troubling issue to the government in this case. And that is the fact that the issue that comes before the Court and that the Court has asked a briefing on was not raised within the time limit of the AEDPA. And because of that, the government should not be made to address that issue. And that is the issue of denial of counsel on appeal. The issue also was never raised, of course, in the appeal itself. I disagree with counsel for Mr. Skirdal. Mr. Bevolden was appointed to represent Mr. Skirdal on the appeal. He could not agree to represent Mr. Skirdal based on Mr. Skirdal's terms. It's important for the Court to understand Mr. Skirdal's thinking as all of this was progressing. This case in our office has been passed around through several people. But I was trial counsel in the case. Mr. Skirdal's philosophy in this case was that he was not a citizen subject to the jurisdiction of the Court, that only the laws of Title 21 applied to the District of Columbia did not apply to him. And it was not because he was mentally incompetent. As a matter of fact, when Mr. Skirdal was arrested, he was in college. He was a college student. The record is there is an interesting hearing where Mr. Skirdal represents himself and questions his brother in the competency hearing and notes that, and it's the Court's reference, which is in the government's excerpts of the record on 55 and 56. He was educated. He was not mentally incompetent. He had held responsible jobs. And the thing that the Court would not permit him to represent himself, the reason the Court would not permit him to represent himself is he would not recognize the jurisdiction of the Court. He was disruptive in all the proceedings that took place. The judge finally decided that he did not understand. What do you mean by disruptive? Your Honor, he would stand up and start talking when he had counsel present. He presented numerous, numerous motions on his own that he wanted to argue. You will recall, I assume from the record, that at one point he curses the judge, calls him a treasonous asshole. And this was the defiance that he showed throughout all the proceedings. The Court, in essence, I believe, saved Mr. Skirdal from himself by not permitting him to represent himself at trial. I'm confused by your argument. Are you saying that he had the capacity to represent himself but was wrongheaded on his theories? He was not mentally incompetent, Your Honor. He was not mentally incompetent. He was not mentally incompetent. Then he had the ability to make a knowing and intelligent waiver, at least from a mental competency standpoint. Is that it? From a mental competency standpoint, he certainly did, Your Honor. Where the Court drew the line with him and said that he could not represent himself in trial was that he did not understand the rules of civil or criminal procedure. Well, it's not only pro se's that have that problem, is it? Well, I would certainly agree with that, Your Honor. But as well as, and it is replete in the record, although it doesn't jump right out to the surface, is the continued disruption that the defendant caused in court. And that was part of the reason that he was shackled during the trial. The Court had a, assuming it was so disruptive that it could not proceed, the Court had remedies to that. I'm sorry, Your Honor? The Court had other remedies than taking his Sixth Amendment right to represent himself away from him. Could have put him in the locker. Could have gagged him. The Supreme Court has told us that's how you take care of disruptive defendants when there's no other way. Well, then how would he have been able to represent himself as far as before the jury? It could have permitted counsel to represent him. Oh, that's a good question. I don't know if the Court has had a case where it's had a disruptive defendant, put him out and let the trial proceed without the attorney. That's what you're saying. That was the problem that the Court was faced with, Your Honor. And as I say, I think that the Court was concerned about him having his rights to a fair trial and that he could not do that on his own terms. Which is what he wanted to do. But he was not mentally incompetent. He had what we have come to learn in Montana as a freeman philosophy. His brother, Rodney Skirdal, was one of the freemen who was later prosecuted in the famous Freeman case. And Rodney was the only counsel that he would accept in this matter. His brother, Rodney, was the only one who understood his philosophy about the Court not having jurisdiction of either the subject matter or his person. Was his brother a member of the bar anywhere? No, Your Honor. And his brother was in court every time he appeared. His brother took part in the proceedings. His brother was called as a witness at the competency hearing and explained the philosophy that the defendant had. The reason that the defendant did not have counsel on appeal was that Mr. Volden would not present these issues on appeal. The defendant did present them on appeal when he represented himself. He appealed on what he wanted to appeal on. And this Court decided on that. He would not have taken another attorney. The Court offered him another attorney. He was not forced to proceed pro se. He decided to proceed pro se. And that was a decision that he was capable of making. And the Court granted him that right at one time. He had proceeded in district court for a period of time as his own counsel. But the fact that he kept rambling off onto the Freeman philosophy and challenging the jurisdiction of court and without any adherence to any sorts of rules of criminal procedure or rules of evidence, that's the reason the Court cut him off. But he was not mentally incompetent. He was just not following. It's your best case that a court can take away an attorney, a defendant's right to represent himself, who is competent but who is, as you put it, disruptive. Your Honor, the courts have said that the right to represent oneself can be removed by the disruptive behavior. There is a Seventh Circuit case, and I'm sorry, Your Honor, it doesn't come to my mind right at the moment, that held just that. I think the guy had gone through four attorneys, and he finally said, you know, this is it. You have to represent yourself now. So there is some precedent for a person being disruptive, being forced to represent themselves. Do you mean being forced to be represented by counsel? No. In that case, I think that the guy did wind up representing himself. My question is different. I see. Well, certainly if a person is disruptive, there are cases that way as well. It says that if you're disruptive in court, you're not going to be able to represent yourself, that you're going to have an attorney appointed to represent you. There is some need to adhere to a reasonable process. In conclusion, I would ask the Court to address what is an honest inquiry about whether or not this claim was timely raised. That has never really been addressed. And we don't believe that this claim was timely raised since it was almost a year after the statute of limitations had run on the changes in the 2255 actions. That and the fact that there has never been any showing of why there was a procedural default in this case, or why the defendant had any external forces that forced him to make the decision he did. I thought I had 49 seconds, but I see I only have 47. Your Honors, one thing I'd like to address, and that is what Mr. Laws said with regard to Mr. Skirdahl being mentally competent. If he was mentally competent, and certainly the district court found him to be, I want to quote from the district court's And this is it, the excerpt of the record at page 55, lines 18 through 21. In view of the case of United States v. Turnbull, I do not think that you are capable of representing yourself and conducting a trial under the federal rules of criminal procedure that you must. I do not feel that you understand the full consequences of representing yourself, how you are to proceed in representing yourself, how the evidence is to be submitted to the jury, how the evidence is to be submitted to the court. What law are you following? It is obvious you don't understand what law we are following. There's nothing in this record to indicate that there was any awareness by Mr. Skirdahl of those same things on appeal. Thank you, Your Honor. The case will be submitted.
judges: Browning, Alarcon, Clifton